55 F.3d 94
 Elizabeth KELLER, Plaintiff-Appellant,
Emmelyn Logan-Baldwin, Esq., Real Party in Interest-Appellant,
v.
MOBIL CORPORATION, Mobil Oil Corporation, Mobil Chemical
Co., a Division of Mobil Oil Corporation; and Rose Freeman,
Individually and as Purchasing Agent (Supervisor), Mobil
Chemical Company, a Division of Mobil Oil Corporation,
Defendants-Appellees.
 Nos. 1229, 1709 to 1711, Dockets 93-7225, 93-7275, 94-7319
and 94-7989.
 United States Court of Appeals,
Second Circuit.
 Argued April 11, 1995.
Decided May 22, 1995.
 
 Emmelyn Logan-Baldwin, Rochester, NY, pro se, and for plaintiff-appellant.
 Gary H. Glaser, New York City (Winston & Strawn, William A. Carmell, of counsel), for defendants-appellees.
 Before: FEINBERG, WALKER and CABRANES, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Plaintiff Elizabeth Keller appeals from the dismissal with prejudice by the United States District Court for the Western District of New York (Michael A. Telesca, Ch.J.) of her complaint against defendants-appellees Mobil Corporation, Mobil Oil Corporation, Mobil Chemical Co. and Rose Freeman (collectively referred to hereafter as "Mobil") following termination of her employment by Mobil Chemical Co. The district court's dismissal was based on Keller's "repudiation" of a settlement agreement and the district court's finding that Keller's "persistent refusal to settle this matter has worked a hardship upon the defendant." Keller's counsel, Emmelyn Logan-Baldwin, also has filed an appeal from a $10,000 sanction imposed upon her in March 1993 and reiterated by the district court in a decision of February 1994. For reasons set forth below, we vacate both the dismissal and the sanction and remand the case to the district court.
 
 
 2
 Although we vacate the district court's orders, we note that this case poses an issue of attorney conflict of interest. As discussed below, after various twists and turns, the litigation reached a stage at which the only impediment to settlement was the sanction against Logan-Baldwin. At least at that point, Keller's interests may have been opposed to those of her attorney. We suggest that the district court consider the issue further on remand.
 
 I. Background
 
 3
 In her complaint filed in May 1990, Keller alleged that she had been terminated from her position as Buyer/Contract Administrator at appellee Mobil for discriminatory reasons prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., and other federal statutes. The requested relief included reinstatement and back pay. Eventually, the parties agreed to discuss bases for a settlement and sought the assistance of the court in that endeavor. Settlement discussions led to a conference in the chambers of Judge Telesca on July 16, 1992. While the parties had already been embroiled in their dispute for over two years prior to that conference, the July 1992 conference is the starting point for discussion of the issues presented on appeal.
 
 
 4
 By the end of the conference the parties apparently had reached a settlement, the main points of which were set out in the record. Judge Telesca concluded the conference by stating, without objection from either Logan-Baldwin or Mobil's representative, that he would issue an order indicating that the case had been settled, and in fact he did so the following day. At this point, it seemed that a simple exchange of documents memorializing the settlement would conclude the matter. However, the ensuing correspondence between Logan-Baldwin and Mobil's counsel indicated that, notwithstanding the parties' apparent settlement in July 1992, differences still remained. Mobil sent draft agreements to Logan-Baldwin, who complained that the drafts failed to reflect the terms of the parties' settlement.
 
 
 5
 As articulated by Logan-Baldwin, Keller had two principal reservations. First, since Keller suffers from severe glaucoma, she sought benefits from Mobil's employee long-term disability plan (the Plan). At the time of the July 1992 conference the plan administrator had not yet determined whether Keller would be eligible for such benefits. Keller was concerned that denial of these benefits would deprive her of an important source of future income. Should her application be denied initially by the plan administrator she wanted to avoid any possible administrative review and instead appeal directly to the district court. Further, it seems that she wanted an assurance that the district court would review a possible adverse decision by the plan administrator under a de novo standard rather than an abuse of discretion standard. Keller believed that the parties had agreed that the district court would retain jurisdiction to conduct an immediate, de novo review of any adverse decision by the plan administrator, but the drafts submitted by Mobil failed to reflect that agreement.
 
 
 6
 Keller's second principal reservation concerned a confidentiality clause in the agreement. Years earlier, Keller had been engaged in another, unrelated dispute with Mobil. That dispute ended in a settlement agreement that contained a clause limiting Keller's right to speak publicly about that case. While Keller opposed any confidentiality clause at all in the instant agreement, she insisted that if there must be such a provision it should contain verbatim the terms of the confidentiality clause in the earlier settlement. That clause bound Keller for only four years and, according to Logan-Baldwin, permitted Keller during that time to acknowledge that there had been a lawsuit that had settled. At the July 1992 conference Logan-Baldwin had given Judge Telesca a copy of the settlement agreement from the earlier dispute, and Judge Telesca gave a copy to Mobil's representative. Keller believed that this amounted to an agreement to incorporate verbatim the confidentiality clause from the earlier agreement.
 
 
 7
 Although Mobil subsequently redrafted the proposed agreement, Keller felt that Mobil had failed to address her two principal concerns. In October 1992, Keller moved the district court to enforce the terms of the parties' settlement as set out in the record of the July 1992 conference. Finding that the most recent draft submitted by Mobil (the October 1992 draft) did reflect the terms of the July 1992 settlement, the court denied Keller's motion and ordered the parties to execute the October 1992 draft within 10 days. Keller then asked the court to reconsider its order.
 
 
 8
 On February 19, 1993, the district court held a hearing on Keller's motion for reconsideration, at which time Logan-Baldwin described the differences, as she saw them, between the terms of the July 1992 settlement and the terms of the October 1992 draft. Although Logan-Baldwin did indicate to the judge her concerns about whether Keller would have to exhaust administrative remedies before coming back to the judge and whether the judge's review would be de novo, Judge Telesca found no apparent difference between the parties' understandings regarding the court's retention of jurisdiction. The judge did acknowledge that there was a difference in understanding as to the terms of the confidentiality agreement. Judge Telesca asked Mobil if it would agree to a clause binding the parties for only four years rather than the lifetime term proposed by Mobil, and Mobil acceded. Judge Telesca also proposed a clause whereby the parties, during the four years, would be "free to acknowledge that there was a lawsuit in existence and that it is settled, but are not free to discuss the terms." The parties agreed to this proposal.
 
 
 9
 In a decision of March 5, 1993, the court then denied Keller's motion to reconsider its earlier decision. Once again Judge Telesca ordered the parties to execute the October 1992 draft, with changes in the confidentiality clause as indicated at the February 19, 1993 hearing. Additionally, pursuant to 28 U.S.C. Sec. 1927, Judge Telesca imposed a sanction on Logan-Baldwin, finding that she had "willfully and unreasonably obstructed and delayed a settlement which was reached after lengthy negotiations and significant recourse to the offices of th[e] Court." He ordered Logan-Baldwin to pay Mobil $10,000 (purportedly Mobil's legal expenses since July 1992, discounted for negotiations that would have occurred regardless of Logan-Baldwin's conduct). When Keller failed to execute the agreement in compliance with his March 5 order, Judge Telesca dismissed her complaint with prejudice by order of March 25, 1993.
 
 
 10
 Keller then appealed to this court. While the appeal was pending the parties reached a settlement (the CAMP settlement) through the auspices of this court's pre-argument mediation program, the Civil Appeals Management Plan (CAMP). The appeal was thereafter withdrawn.
 
 
 11
 The CAMP settlement was composed of two parts. The first part was an agreement jointly to move the district court to rescind its dismissal with prejudice of Keller's complaint as well as its sanction against Logan-Baldwin. (This part is referred to hereafter as "the joint motion.") The second part was an agreement as to the substance of Keller's relief. The document memorializing the latter agreement was to be held in escrow pending the district court's granting of the joint motion. (The second part of the CAMP settlement is referred to hereafter as "the agreement in escrow.")
 
 
 12
 Pursuant to the CAMP settlement, the parties jointly petitioned the district court in February 1994 to vacate the dismissal of Keller's suit as well as the sanction order against Logan-Baldwin. (By this time the Mobil plan administrator had found Keller entitled to long-term benefits under the Plan. That determination apparently rendered moot Keller's concern about the district court's retention of jurisdiction, noted above.) By order of February 17, 1994, the district court did vacate its dismissal of Keller's suit but declined to vacate the sanction order. The court noted, however, that the parties were free to agree privately to a waiver of payment of the sanction fine.
 
 
 13
 The district court's February 1994 decision marked a turning point. At that moment, the only conceivable obstacle to concluding a settlement was the district court's refusal to rescind its sanction order. But for the sanction, the matter would have been resolved. As we explain below, the continued attorney-client relationship between Logan-Baldwin and Keller from at least that moment forward causes us concern.
 
 
 14
 Although the district court had declined to withdraw its sanction order, Mobil offered to waive payment if Keller would consummate the agreement in escrow. Keller, through Logan-Baldwin, rejected this offer. Then, on March 18, 1994, Logan-Baldwin filed an appeal pro se and on behalf of Keller. Although the sanction order originally imposed in March 1993 and reiterated by the district court in February 1994 pertained to Logan-Baldwin exclusively, the March 18, 1994 notice of appeal purported to appeal from "so much of the [February 17, 1994] decision and order ... that imposes, reaffirms and/or reasserts any sanction and/or penalty and/or judgment of misconduct against Elizabeth Keller and/or Emmelyn Logan-Baldwin...." (emphasis supplied). Mobil again offered to consummate the agreement in escrow with Keller, this time without waiving the right to payment of the $10,000. This offer would have permitted Logan-Baldwin to appeal the sanction order separately. There was no reply to this offer.
 
 
 15
 By May 3, 1994, as Keller still refused to execute the agreement in escrow, Mobil moved the district court under Federal Rule of Civil Procedure 60(b) to reinstate the court's prior dismissal of Keller's complaint with prejudice. The district court granted that motion on August 24, 1994. Keller appealed from the reinstated dismissal of her complaint, and that appeal was consolidated with Logan-Baldwin's earlier appeal from the reiterated sanction order against her.
 
 II. Discussion
 
 16
 The principal issues before us on this appeal are the propriety of the sanction against Logan-Baldwin and the dismissal with prejudice of Keller's complaint. Also, there is a question regarding Logan-Baldwin's compliance with professional ethical requirements following the imposition of a sanction against her and later reiteration of the sanction.
 
 
 17
 The sanction against Logan-Baldwin is the crux of the stalemate that led the district court ultimately to dismiss Keller's complaint with prejudice. As Logan-Baldwin conceded at oral argument in this court, once the district court issued its order of February 17, 1994, the sanction was the only obstacle to consummation of the parties' agreement in escrow. At that juncture, Mobil was willing to provide Keller with all of the relief promised in the agreement in escrow. Yet, notwithstanding the importance of settlement to her livelihood, as sworn to in an affidavit submitted to the district court, Keller would not let the matter rest until the sanction against her attorney, for which Keller bore absolutely no liability, was lifted. Conversely, if the sanction were removed then the way to a settlement would be clear.
 
 
 18
 Logan-Baldwin argues that a district court must vacate any judgment in the interest of facilitating settlement pending appeal. That argument is based on a misreading of our decision in Nestle Co. v. Chester's Market, Inc., 756 F.2d 280 (2d Cir.1985), and subsequent cases including, significantly, the Supreme Court's recent decision in U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, --- U.S. ----, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). While our decision in Nestle emphasized the importance of encouraging parties to settle disputes, the district court in this case was correct in concluding that we have not endorsed use of settlement as a means of "manipulat[ing] the judicial system" for the personal benefit of counsel. Cf. Manufacturers Hanover Trust Co. v. Yanakas, 11 F.3d 381, 385 (2d Cir.1993) ("[W]hen the proposed [judicial economy] can be realized only at the cost of increasing the vulnerability of the judicial system to manipulation, we view the investment as unsound.").
 
 
 19
 Unlike Nestle, in which the parties sought to vacate a district court's decision on the merits of a trademark dispute as a condition to settlement, here Keller seeks to vacate a collateral decision of the district court concerning her attorney's alleged misconduct as a condition to settling her dispute with Mobil. Our holding in Nestle does not require a district court to accept such a condition for the sake of facilitating settlement. The public interest in having rules of procedure obeyed is at least as important as the public interest in encouraging settlement of disputes. Thus, the Supreme Court has held recently that even when it is determined on appeal that a district court lacked subject matter jurisdiction over a dispute, a sanction imposed by the district court for failure to comply with rules of procedure will still be upheld. Willy v. Coastal Corp., 503 U.S. 131, 137-39, 112 S.Ct. 1076, 1080-81, 117 L.Ed.2d 280 (1992).
 
 
 20
 Therefore, there is no question that despite the parties' agreement to ask for the withdrawal of the sanction order as a condition to settlement, the district court had the power to preserve a sanction already imposed on Logan-Baldwin pursuant to 28 U.S.C. Sec. 1927. However, the question is whether, under the circumstances of this case, it erred in doing so.
 
 Section 1927 provides:
 
 21
 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 22
 Our decisions addressing this provision have emphasized the requirement that an attorney's acts be vexatious in order to be sanctionable. We have made it clear, for instance, that actions are sanctionable under Sec. 1927 only if they are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir.1986), cert. denied sub nom. Suffolk County v. Graseck, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); see also United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir.1991) ("Bad faith is the touchstone of an award under this statute."); Kamen v. American Tel. & Tel., 791 F.2d 1006, 1010 (2d Cir.1986). But cf. Cruz v. Savage, 896 F.2d 626, 632 (1st Cir.1990) ("Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so."). In Hudson Motors Partnership v. Crest Leasing Enterprises, 845 F.Supp. 969, 978 (E.D.N.Y.1994), Judge Glasser examined the types of acts that, under the "bad faith" test, would justify sanctions under Sec. 1927. These include: "resubmitting a motion that had previously been denied"; "bringing a motion based on 'facts' the opposite of which were previously found by the court"; "making several insupportable bias recusal motions and repeated motions to reargue"; "continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased"; and "waiting until the eve of trial before making a jury demand." Id. (internal citations and quotation marks omitted).
 
 
 23
 We now turn to the allegedly sanctionable acts at issue. Preliminarily, we note our sympathy with Judge Telesca's frustration at the delay caused by Logan-Baldwin's excruciating attention to detail, as reflected in the record, and her at times exasperating conduct. Nevertheless, based on the particular circumstances of this case as revealed in the record before us, we conclude that the sanction on Logan-Baldwin under Sec. 1927 was not justified.
 
 
 24
 We do not believe that Logan-Baldwin acted in bad faith in insisting that the agreement conform to her understanding of the parties' settlement. The record reflects a bona fide belief on Logan-Baldwin's part that her client would not be adequately protected by Mobil's proposed retention-of-jurisdiction and confidentiality clauses. It does not appear that Logan-Baldwin had any ulterior motive for insisting on different language. Keller surely did not gain any advantage by the additional delay. Nor did Logan-Baldwin appear to use her proposed changes as bargaining chips to extract additional concessions from Mobil.
 
 
 25
 It may be that Logan-Baldwin's insistence on particular language for the retention-of-jurisdiction clause reflected a lack of understanding of the ERISA context in which a decision on disability benefits normally would be made. However, some of Judge Telesca's statements on the retention-of-jurisdiction issue were susceptible to the very sort of confusion that actually arose. For instance, at the February 1993 hearing on Keller's motion to reconsider the court's November 1992 order, the following colloquy occurred:
 
 
 26
 THE COURT: On [Keller's forthcoming] review in June of 1993, based on glaucoma in one eye and the possibility it would spread over to the other eye, if [the plan administrator] did not find her to be disabled she would have the right to waive--they waived venue. Mobil waived venue and would bring the matter here for me to determine.
 
 
 27
 That was the continuing jurisdiction idea--
 
 
 28
 MS. LOGAN-BALDWIN: That's right.
 
 
 29
 THE COURT:--that I would determine whether or not the action of the plan administrator--whoever made the determination--was wrong under the circumstances.
 
 
 30
 (emphases supplied). Logan-Baldwin might in good faith have interpreted the judge's statements to reflect an understanding that he would review any adverse determination by the plan administrator de novo.
 
 
 31
 Moreover, Logan-Baldwin's insistence on particular language for the confidentiality clause rested on a defensible foundation. That is, as to the confidentiality clause Logan-Baldwin could argue in good faith that there was no meeting of the minds until the February 19, 1993 hearing, at which Mobil acceded to a four-year term with the right to acknowledge the existence of a settlement during that term. Whether or not the details of the confidentiality clause should have assumed such significance in the parties' settlement, Logan-Baldwin represented that they were material as far as Keller was concerned, and there was no persuasive reason to doubt this. After all, the four-year term insisted on by Logan-Baldwin in this negotiation--which was the main sticking point on this issue--followed the precedent of the settlement of an earlier legal dispute between Keller and Mobil. As frustrating as Logan-Baldwin's manner of conducting negotiations may have been, we do not believe that it rose to a level of bad faith warranting a sanction under Sec. 1927.
 
 
 32
 Overturning the sanction against Logan-Baldwin eliminates the only impediment to consummation of the settlement between Keller and Mobil. It was the court's refusal to rescind the sanction in its February 17, 1994 order that induced the stalemate finally broken by the court's reinstatement of its dismissal with prejudice of Keller's complaint.
 
 
 33
 Since we now conclude that the sanction should not have been imposed in the first place, we believe that equity requires vacatur of the dismissal. Accordingly, the dismissal is vacated. On remand the district court should enter judgment based upon the agreement in escrow which, according to the parties' February 1994 joint motion in the district court, has been executed by both sides.
 
 
 34
 Finally, we believe that the district court on remand should address whether Logan-Baldwin complied with relevant provisions of the New York Code of Professional Responsibility in her representation of Keller following imposition of the sanction upon her in the March 5, 1993 order and especially following reiteration of the sanction in the February 17, 1994 order. Our concern is whether Logan-Baldwin had a conflict of interest. We express no view on this collateral issue and our statement of it is not meant to reflect upon Keller in any way. It may be that the question should simply be called to the attention of an appropriate committee of a bar association or examined pursuant to Rule 83.3 of the Local Rules of the United States District Court for the Western District of New York, but we leave that to the district court. However the court disposes of this last matter, it should not affect the granting of judgment based upon the agreement in escrow. Cf. Kline v. Wolf, 702 F.2d 400, 405 (2d Cir.1983) ("We have no doubt that a court would be justified in directing the entry, with the defendant's consent, of a judgment which gave a plaintiff all the relief he had requested....") (citation omitted).
 
 
 35
 Judgments vacated and remanded for further proceedings in accordance with this opinion.[1]
 
 
 
 [1]
 In this court, Keller in turn seeks sanctions against Mobil under Fed.R.Civ.P. 11. The request is denied