**MAJOR LEAGUE BASEBALL PROPERTIES, INC.,**
**Plaintiff–Appellant,**

v.

**PACIFIC TRADING CARDS, INC.,**
**Defendant–Appellee.**

No. 98–7700.

United States Court of Appeals,
Second Circuit.

Argued May 19, 1998.

Decided July 13, 1998.

Charles E. Jarrett, Baker & Hostetler LLP, Cleveland, OH (Bruce O. Baumgartner, Deborah A. Wilcox, Laurel E. Queeno, Baker & Hostetler; Wm. Lee Kinnally, Jr., Gibney, Anthony & Flaherty, LLP, New York City, of counsel), for Plaintiff–Appellant.

Michael E. Kipling, Stokes Lawrence, P.S., Seattle, WA (Paul R. Grand, Michael C. Silberberg, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City; James C. Fowler, Alice F. Gustafson, Graham & Dunn, Seattle, WA, of counsel), for Defendant–Appellee.

Before: WINTER, Chief Judge, JACOBS, Circuit Judge, and CARMAN, Judge.*

WINTER, Chief Judge:

Major League Baseball Properties, Inc. ("MLB") moved for an injunction pending appeal of an order issued by Judge Martin denying MLB's motion for a preliminary injunction. *See Major League Baseball Properties, Inc. v. Pacific Trading Cards, Inc.*, No. 98 Civ. 2739, 1998 WL 241904 (S.D.N.Y. May 14, 1998). MLB also sought an expedited appeal from Judge Martin's order. After argument on the motions, the parties asked us to vacate the district court's order and opinion so that they could settle their dispute. We granted the request and stated that an opinion explaining that action would follow. This is that opinion.

The background to this matter is as follows. In April 1998, MLB brought the present action against Pacific Trading Cards, Inc. ("Pacific"), claiming that Pacific was in the process of manufacturing and distributing, without authorization, trading cards that depicted major-league baseball players in MLB-trademarked uniforms. Although Pacific had obtained licenses in previous years from MLB, MLB refused to grant a license to Pacific for the present set of cards. Pacific, either believing mistakenly that it would receive a license from MLB or not caring whether it would, manufactured the cards and was about to distribute them when we heard the present motion.

MLB's position is that Pacific's unauthorized cards would infringe and dilute MLB's trademarks and would constitute unfair competition. In addition, Pacific had acknowledged in previous licensing agreements with MLB the proprietary nature of MLB's marks and had agreed not to use them without MLB's consent. MLB maintained that Pacific's intended unauthorized use would breach those agreements.

MLB moved to preliminarily enjoin Pacific from manufacturing and distributing the cards until MLB's claims were resolved. The district court denied this motion on the ground that MLB was not likely to prevail on the merits of its claims. *See Major League Baseball Properties*, 1998 WL 241904, at *1. MLB then filed a motion in this court for an injunction pending appeal of the district court's order. On May 19, 1998, we heard argument on that motion during which counsel for Pacific indicated that prohibiting immediate shipment of the cards would be financially ruinous. After a brief recess, we informed the parties of our inability to hear, even on an expedited basis, the merits of the appeal until July. We also expressed our

---

* The Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

intention to grant MLB's motion unless Pacific posted a bond sufficient to secure MLB's claims. We then ordered the parties to calculate the amount necessary to secure these claims and to report back to us. Finally, we suggested to the parties that they attempt to negotiate a settlement. To aid discussion, we assigned staff counsel to mediate the matter.

At the end of the day, the parties reported back to this panel in chambers. Pacific advised us that it would have difficulty raising the funds necessary to post a bond but stressed again that, if we were to grant the injunction and hear the appeal only in July, the financial effect would be ruinous, whether or not Pacific prevailed on the merits. Pacific and MLB then jointly informed us that they could settle the dispute but only if the district court's order and opinion were vacated. The parties jointly moved us to vacate the order and opinion and signed a stipulation to that effect.

After consideration of the Supreme Court's decision in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), we issued an order, included as an appendix to this opinion, vacating the district court's order and opinion and dismissing MLB's motions as moot in light of the parties' settlement. *See Major League Baseball Properties, Inc. v. Pacific Trading Cards, Inc.,* 150 F.3d 149 (2d Cir.1998). We stated in that order that this opinion would follow.

■ Under 28 U.S.C. § 2106, we have the power to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before [us] for review." The power to vacate remains vested in an appellate court even if the judgment before it becomes moot. *See Walling v. James V. Reuter Inc.,* 321 U.S. 671, 677, 64 S.Ct. 826, 88 L.Ed. 1001 (1944) ("If a judgment has become moot, this Court may not consider its merits, but may make such disposition of the whole case as justice may require."); *see also United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

■ However, an appellate court's power to vacate judgments was circumscribed by the Supreme Court in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. at 29, 115 S.Ct. 386. In *Bancorp,* the Court held that "mootness by reason of settlement does not justify vacatur of a judgment under review." *Id.* The Court explained that vacatur should be regarded as an extraordinary remedy because judicial precedents have social value. *Id.* at 26–27, 115 S.Ct. 386. It recognized that parties often have an "equitable entitlement" to this extraordinary remedy. *Id.* at 26, 115 S.Ct. 386. For example, a party "who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.* at 25, 115 S.Ct. 386. However, the Court announced that this equitable rationale does not justify vacatur if the judgment is mooted by settlement because, by settling, "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice." *Id.* at 25, 115 S.Ct. 386. Thus, when a judgment is mooted by settlement, vacatur is usually not justified because the social value in preserving precedents is not outweighed by equitable considerations.

Nevertheless, the Court noted that an exception could be made even for settled cases where "exceptional circumstances" counselled in favor of vacatur. *Id.* at 29, 115 S.Ct. 386. Although neither the Supreme Court nor this court has examined the nature of the "exceptional circumstances" required, the First Circuit has addressed the issue in *Motta v. District Dir. of INS,* 61 F.3d 117 (1st Cir.1995) (per curiam), which vacated a lower court's opinion on the ground that "exceptional circumstances" tipped the equitable balance in favor of vacatur. *Id.* at 118–19. In *Motta,* the INS appealed from a judgment of the district court staying the deportation of the appellee pending a decision on his motion before the Board of Immigration Appeals to reopen his deportation proceedings. *Id.* at 117–18. The First Circuit encouraged the INS to settle the appel-

lees' claims because it was in the interest of all parties. However, the INS believed that it could not settle—it was a "repeat player before the courts" and thus could not relinquish its right to appeal a decision that might harm it in future litigation. *Id.* at 118. Based on these facts, the First Circuit held that exceptional circumstances existed: the court and the appellee, not the appellant, initiated consideration of settlement; all the parties had a significant interest in vacating the district court's opinion; and, that interest outweighed the social value of the precedent.

■ With these principles in mind, we vacated Judge Martin's order and opinion, holding that the circumstances surrounding the motion and settlement were so exceptional that vacatur was appropriate. As in *Motta*, appellant, MLB "did not by its own initiative relinquish its right to vacatur." *Motta*, 61 F.3d at 118. Rather, Pacific strongly desired a settlement to avoid the financial consequences of either posting the bond or not shipping the cards, the only options before it. Pacific could not test the merits of the favorable lower-court opinion without risking the severe financial consequences of our intended ruling on MLB's motion.

MLB was agreeable to a settlement but needed a vacatur because, in the course of defending its marks, it, like the INS in *Motta*, had to be concerned about the effect of the district court's decision in future litigation with alleged infringers. Under trademark law, MLB must defend its mark against all users or be subject to the defense of acquiescence. *See* 15 U.S.C. §§ 1069, 1115(b)(8); *McLean v. Fleming*, 96 U.S. 245, 257–58, 24 L.Ed. 828 (1877); *Bourne Co. v. Tower Records, Inc.*, 976 F.2d 99, 102 (2d Cir.1992); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1042 (2d Cir.1980).

The parties were thus locked in a dispute that they could end on a commercial basis satisfactory to both. However, a vacatur of the district court's order and opinion was a necessary condition of settlement. Unlike *Bancorp*, therefore, the victor in the district court wanted a settlement as much as, or more than, the loser did. MLB, by law, had to continue to test the merits of the district court's opinion or risk its marks if it could

not obtain a vacatur. The only damage to the public interest from such a vacatur would be that the validity of MLB's marks would be left to future litigation. In our view, these facts met the "exceptional circumstances" test of *Bancorp*.

We therefore vacated as moot the district court's decision and dismissed MLB's motions for an injunction pending appeal and for an expedited appeal.

## APPENDIX

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Major League Baseball Properties, Inc., Plaintiff–Appellant,

v.

Pacific Trading Cards, Inc., Defendant–Appellee.

No. 98–7700.

May 19, 1998.

Present: WINTER, Chief Judge, JACOB, Circuit Judge, CARMAN, Judge.

Whereas, the plaintiff/appellant has appealed the denial of its motion for preliminary injunction; and

Whereas, the plaintiff/appellant has moved for an injunction pending a decision of its appeal; and

Whereas, the panel hearing the motion expressed its intention to deny the injunction only on the condition that the defendant/appellee post a bond sufficient to secure plaintiff/appellant's claim for damages; and

Whereas, defendant/appellee has indicated that it would have great difficulty posting a sufficient bond and that an injunction would be ruinous to its business; and

Whereas, the defendant/appellee has been offered a licensing agreement by plaintiff/appellant, and the parties have asked us to direct that the decision of the District Court be vacated; and

Whereas, this court is unable to hear and determine the merits of the appeal until July;

Now therefore, we find that exceptional circumstances exist and that it is equitable to order vacatur of the District Court opinion and judgment in light of our determination that these exceptional circumstances outweigh the considerations concerning the public interest or the administration of justice identified in *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994);

Therefore, the decision and order of the District Court is hereby vacated and this appeal is hereby dismissed. An opinion will follow.

So Ordered.